IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **LYNETTE WILBORN as mother and next friend of LATREASE WILBORN, a minor,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 09-2545-STA-dkv |
| **TIMOTHY PAYNE and THE CITY OF MEMPHIS,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**ORDER GRANTING DEFENDANT CITY OF MEMPHIS'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant City of Memphis's Motion for Summary Judgment (D.E. # 21) filed on May 2, 2011. Plaintiff Lynette Wilborn has filed a response in opposition. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

The following facts are not in dispute for purposes of this Motion unless otherwise noted. In 2008, Timothy B. Payne ("Payne") was employed by the City of Memphis as an attendant at Westwood Pool. (Def.'s Statement of Fact ¶ 1.) Payne was employed with the City of Memphis from May 27, 2006, through July 31, 2008, working as an attendant at the Westwood Pool as a temporary employee. (*Id.* ¶ 4.) Payne's duties included checking guests' ID and securely storing guests' personal items. (*Id.*) Payne is currently incarcerated at the Shelby County Jail, 201 Poplar Avenue, Memphis, Tennessee 38103. (*Id.*)

1

Plaintiff Latrease Wilborn was a guest at the Westwood Pool on July 31, 2008, and was at that time 17 years old. (*Id.* ¶ 2.) On July 31, 2008, Darrius Stewart ("Stewart") was employed with the City of Memphis as a lifeguard at Westwood Pool. (*Id.* ¶ 5.) Plaintiff and Stewart began dating prior to the incident which is the basis of this action. (*Id.* ¶ 6.)

During the daytime hours of July 31, 2008, it began to rain, and the pool was closed. (*Id.* ¶ 7.) When the pool employees were allowed to leave after the pool closing, Payne asked Stewart what his plans were. (*Id.* ¶ 8.) Stewart replied that he and Plaintiff were leaving to go to his house. (*Id.*) Payne offered to give Stewart and Plaintiff a ride to Stewart's house. (*Id.* ¶ 9.) Stewart usually rode home with his manager Courtney Boddie ("Boddie"). (*Id.* ¶ 10.) However, Stewart did not want to wait for Boddie to lock up the building, so he decided to wait for his younger brother to come to pick up him along with Plaintiff. (*Id.*) When Stewart learned that his brother was in South Memphis, he accepted a ride from Payne. (*Id.* ¶ 11.)

Payne dropped Stewart and Plaintiff off at Stewart's residence. (*Id.* ¶ 12.) At that time Payne asked both Stewart and Plaintiff if they needed him to come back later to take Plaintiff home or give Stewart another ride. (*Id.* ¶ 13.) Plaintiff and Stewart accepted Payne's offer, and Payne later returned to pick up both Plaintiff and Stewart. (*Id.* ¶¶ 13, 14.) At no point did Payne ever enter Stewart's home. (*Id.* ¶ 15.) In the mean time, Plaintiff watched television with Stewart, and then the two engaged in sexual intercourse. (*Id.* ¶ 16.)

Stewart then left Plaintiff at his home while he went to Tippy's, a neighborhood corner store where Stewart saw Payne. (*Id.* ¶¶ 17, 18.) About twenty-five minutes later, Payne returned to Stewart's house and asked if Stewart and Plaintiff needed a ride. (*Id.* ¶ 19.) Both Stewart and Plaintiff got into Payne's vehicle so that Payne could drive Stewart to the gym and Plaintiff to

2

her home. (*Id.* ¶ 20.)  When Plaintiff entered Payne's vehicle, she knew that it was his personal vehicle and not a city vehicle. (*Id.* ¶ 21.)  When Payne gave Plaintiff and Stewart a ride on July 31, 2008, he did not represent that transporting them was part of his duties as a City of Memphis employee. (*Id.* ¶ 22.)  Plaintiff did not request that Payne take her home before taking Stewart to the gym. (*Id.* ¶ 23.)

After Payne dropped Stewart off, Payne said that he had to pick up something at another man's home. (*Id.* ¶ 24.)  Payne drove Plaintiff to that house, yet the man never showed up. (*Id.* ¶ 25.)  Payne then asked Plaintiff to enter the house, smoke with him, and massage his back. (*Id.*)  After leaving the residence, Payne drove Plaintiff past her house to Swanee Road near Shelby Drive where he told her to get out of the car. (*Id.* ¶ 26.)  Payne ordered Plaintiff to remove her clothes. (*Id.* ¶ 27.)  At that point Plaintiff pulled out a pocket knife only to have Payne take it away and use it to force her to remove her clothes. (*Id.*)  Payne forced Plaintiff to walk down the railroad tracks and then perform oral sex. (*Id.* ¶ 28.)  Then Payne forced Plaintiff to lie down and proceeded to rape her. (*Id.* ¶ 29.)  Following the rape, Payne ordered Plaintiff to dress, took her home, and told her not to tell anyone. (*Id.* ¶ 30.)  As soon as she arrived at home, Plaintiff told her mother what had happened. (*Id.* ¶ 31.)

About an hour after Payne took her home, Plaintiff called Stewart screaming. (*Id.* ¶ 32.) Stewart spoke with Plaintiff and testified that she was not crying but sounded mad. (*Id.* ¶ 33.) Stewart went to Plaintiff's home that night to speak with Plaintiff. (*Id.* ¶ 34.)  Stewart then called Boddie but had to leave a message on Boddie's answering machine. (*Id.* ¶ 35.)

Stewart saw Payne the following day at work as he was leaving. (*Id.* ¶ 36.)  Upon learning about the incident between Payne and Plaintiff, Boddie contacted his direct supervisor

3

David Han who instructed him to terminate Payne's employment. (*Id.* ¶ 37.)  Boddie discharged Payne based on the allegation that Payne had raped Plaintiff. (*Id.* ¶ 38.)  Thereafter, Payne was charged with aggravated rape and criminal exposure to HIV. (*Id.* ¶ 39.)

According to the City of Memphis, Payne and Plaintiff engaged in sexual intercourse a year prior to July 31, 2008. (*Id.* ¶ 40.)[1]  Plaintiff did not reveal the sexual encounter with Payne during the summer of 2007 and never reported it to the City of Memphis. (*Id.* ¶ 41.)

When Payne was hired as a temporary employee for the City of Memphis, background checks were not performed on temporary employees unless the applicant either answered yes or failed to respond to Question 10 on the application for temporary employment. (*Id.* ¶ 43.) Question 10 asked, "Have you ever been convicted of an offense other than minor traffic violations?" (*Id.*)  Payne submitted an application for temporary employment with the City of Memphis for the position of pool checker (aquatic attendant) on May 16, 2006. (*Id.* ¶ 44.)  On his application, Payne responded "No" to Question 10. (*Id.* ¶ 45.)  As a result, the City of Memphis did not perform a background check on Payne. (*Id.*)  On May 27, 2006, Payne was hired as a temporary employee of the City of Memphis at the Westwood Pool for employment during the summer of 2006. (*Id.* ¶ 46.)  Payne was not required to re-apply for the position and returned to the job during the summers of 2007 and 2008. (*Id.* ¶ 47.)  The City of Memphis employs a substantial number of temporary employees in various positions within city government. (*Id.* ¶ 48.)

In her response brief, Plaintiff has offered a series of additional facts about Payne's

---

[1] Plaintiff objects to Defendant's description of this act as "consensual" due to the fact that in 2007 Plaintiff was sixteen years old and Payne was thirty-six.  The Court agrees.

criminal history prior to his employment with the City of Memphis. Plaintiff also asserts that City of Memphis does not provide any training to its employees who work at the Westwood Pool regarding appropriate behavior with juveniles. (Pl.'s Statement of Add'l Facts ¶ 58.) The director of the Westwood Pool told police that there had been other complaints about Payne involving young girls. (*Id.* ¶ 59.) Boddie said that other complaints had been made about Payne's interaction with young girls before he was the pool manager. (*Id.* ¶ 60.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

[4] *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548.

[5] *Matsushita*, 475 U.S. at 586, 106 S. Ct. 1348.

preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9] Finally, the "judge may not make credibility determinations or weigh the evidence."[10]

## ANALYSIS

The Court holds that Defendants are entitled to summary judgment on Plaintiff's § 1983 claims. Section 1983 creates a cause of action when there is a deprivation "of any rights, privileges, or immunities secured by the Constitution," as a result "of any statute, ordinance, regulation, custom, or usage, of any State."[11] Plaintiff must establish that she suffered the deprivation of a right by a person acting under color of state law. The Sixth Circuit has ruled

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[7] *Id.* at 251-52, 106 S. Ct. 2505.

[8] *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] 42 U.S.C. § 1983.

that "no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause" and that a citizen has "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity."[12] In this case Plaintiff has alleged that Payne forced her at knife-point to remove her clothing and then raped her. Defendant City of Memphis does not dispute that Plaintiff has a right to be free from sexual abuse from a state actor. Defendant does deny that the City had a custom or policy which was the moving force behind Plaintiff's injury or that Payne was acting under color of law. Therefore, the Court will address each of these issues in turn.

### I.     **Municipal Liability**

In cases of local government liability, a plaintiff must allege the following: (1) that the plaintiff has suffered a deprivation of a constitutional right; and (2) the local government is responsible for that violation.[13] Furthermore, a local governmental entity, such as the City of Memphis "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the [entity] itself is the wrongdoer."[14] The standard for

---

[12] *Doe v. Magoffin Cnty. Fiscal Ct.*, 174 F. App'x 962 (6th Cir. 2006).

[13] *Doe v. Claiborne Cnty., Tenn. By and Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

[14] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121, 112 S. Ct. 1061, 117 L. Ed. 2d. 261 (1992). *See also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 726-29, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental bodies); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (rejecting simple vicarious liability for municipalities under § 1983).

municipal liability is deliberate indifference.[15] The Supreme Court has described deliberate indifference as "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[16] To prove deliberate indifference, a plaintiff "typically" must show that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures.[17] The plaintiff must further prove that the municipal policies and practices directly caused the constitutional violation.[18]

In the specific context of municipal liability for hiring decisions, the plaintiff must prove (1) sufficient fault in the form of "deliberate conduct" and (2) a causal link between the alleged policy or custom and the injury.[19] The Supreme Court in *Brown* explained the reasons why a plaintiff's burden is necessarily a high one in such cases:

> Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.[20]

The *Brown* Court concluded that "[c]ases involving constitutional injuries allegedly traceable to

---

[15] *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 411, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *City of Canton*, 489 U.S. at 389, 109 S. Ct. 1197; *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007).

[16] *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005) (quoting *Brown,* 520 U.S. at 410, 117 S.Ct. 1382).

[17] *Id.* (citing *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir. 1997)).

[18] *Id.* (citing *Gray ex rel. Estate of Gray v. City of Detroit,* 399 F.3d 612, 617 (6th Cir. 2005)).

[19] *Magoffin Cnty.*, 174 F. App'x at 967 (citing *Brown,* 520 U.S. at 404, 117 S. Ct. 1382).

[20] *Brown,* 520 U.S. at 410, 117 S. Ct. 1382.

8

an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause."[21]

Applying these principles to the case at bar, the Court holds that Plaintiff has failed to adduce proof that the City of Memphis was deliberately indifferent to a serious risk of constitutional harm when it failed to conduct a background check on its temporary employees. Plaintiff has argued that the City's policy of not conducting background checks on applicants for temporary positions was the moving force behind the sexual assault Payne inflicted on Plaintiff. The Court begins by finding that the City's failure to make any criminal background check on Payne was clearly inadequate.[22] However, this is not a case where city policy required a screening of all applicants and the City simply failed to conduct a background check or failed to scrutinize Payne's application closely enough.[23] It is undisputed that at the time of Payne's hiring, the City did not perform background checks on temporary employees unless the applicant disclosed a prior criminal history or failed to respond to the appropriate question altogether. The issue presented then is whether the City's policy of not screening all applicants for temporary employment showed a deliberate indifference to Plaintiff's constitutional rights. In order to

---

[21] *Id.* at 415, 117 S. Ct. 1382.

[22] *Id.* ("We assume that a jury could properly find in this case that Sheriff Moore's assessment of Burns' background was inadequate.").

[23] *Cf. id*. at 410, 117 S.Ct. 1382 ("Indeed, respondent does not contend that Sheriff Moore's hiring practices are generally defective. The only evidence on this point at trial suggested that Sheriff Moore had adequately screened the backgrounds of all prior deputies he hired. . . . Respondent instead seeks to trace liability to what can only be described as a deviation from Sheriff Moore's ordinary hiring practices. Where a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high.").

make out such a claim, Plaintiff must adduce evidence of other incidents of assaults by temporary city employees. Like the plaintiff in *Doe v. Magoffin County Fiscal Court*, Plaintiff "has not pointed to any other instance in which the [City]'s failure to perform background checks caused another to be deprived of his or her constitutional rights."[24] Put another way, "[t]he mere fact that one employee committed a crime does not demonstrate that [a municipality's] custom of not performing background checks was sure to lead to constitutional deprivations . . . ."[25] Therefore, the Court holds that Plaintiff has failed to present any evidence of the City's deliberate indifference by virtue of its policy toward temporary employees.

In support of her argument that Payne posed a "plainly obvious" risk of committing a sexual crime in the scope of his employment, Plaintiff has cited *Magoffin County*. Plaintiff correctly argues that the facts in *Magoffin County* are analogous in important respects. Just as in the case at bar, *Magoffin County* involved a claim of municipal liability arising from a government employee's rape of a minor female. The municipal employee in that case, like Payne, was accused of rape, and the plaintiff alleged that the municipality had negligently hired the employee. The local court did not conduct background checks of its job applicants, just as the City here did not conduct checks of applicants for temporary positions. The Sixth Circuit concluded that even though the local court did not conduct a background check, nothing in the employee's criminal history would have made it "plainly obvious" that the employee was likely to commit rape in the course of his employment. In contrast, Plaintiff argues that Payne's criminal history involving rape makes its "plainly obvious" that Payne posed a risk of such

---

[24] *Magoffin Cnty.*, 174 F. App'x at 968 (citing *City of Canton*).

[25] *Id*.

conduct in the course of his employment with the City.  It is true that unlike the employee in *Magoffin County*, Payne has relevant prior criminal history, a rape charge in 1993 to which Payne eventually pled guilty to assault.  Even assuming that it is "plainly obvious" that Payne posed a risk of committing a sexual crime in the course of his employment, the issue for the Court becomes whether a single instance of misconduct, albeit egregious, constitutes evidence of the City's deliberate indifference.  The Supreme Court assumed without deciding that proof of a single incident of inadequate screening or hiring might be enough to prove such a claim under § 1983.[26]  Following *Brown*, the Sixth Circuit made the same assumption without actually deciding the issue.[27]  Plaintiff has cited no authority for the proposition that a single heinous incident following a failure to screen an applicant can prove a municipality's deliberate indifference.  Therefore, Defendant's Motion for Summary Judgment on Plaintiff's municipal liability claim is **GRANTED**.

## II.     Official and Individual Capacity Claims

In order to hold Payne liable in his official or individual capacities under § 1983, Plaintiff must establish that Payne acted under color of law when he deprived Plaintiff of her constitutional rights.  Section 1983 does not provide a cause of action "unless a state actor's

---

[26] *See Brown*, 520 U.S. at 410, 117 S.Ct. 1382 ("Even assuming without deciding that proof of a single instance of inadequate screening could ever trigger municipal liability, the evidence in this case was insufficient to support a finding that, in hiring Burns, Sheriff Moore disregarded a known or obvious risk of injury.").

[27] *See Magoffin Cnty.*, 174 F. App'x at 968 n.5 ("We have also assumed, as the Supreme Court did in *Brown*, that one hiring decision can qualify as a policy or custom.").

conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office."[28] A person "acts under color of state law when he abuses the position given to him by the state."[29] The primary issue is whether the person "intends to act in an official capacity or to exercise official responsibilities pursuant to state law."[30] Any act of state officials "in the ambit of their personal pursuits" is not an act taken under color of law.[31] "A defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law."[32] Above all any conduct which can be characterized as under color of law "must be fairly attributable to the state."[33] An individual may not recover under § 1983 for acts not undertaken under color of law.[34]

The Court holds that Plaintiff cannot establish that Payne was acting under color of law when he assaulted her on July 31, 2008. It is undisputed in this case that Payne had two different

---

[28] *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 49-50, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) ("The traditional definition of acting under color of state law requires that the defendant . . . exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.").

[29] *Waters*, 242 F.3d at 359.

[30] *Id*.

[31] *Id*.

[32] *Id*. (citation omitted).

[33] *Id*. (citations omitted)

[34] *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007); *Azar v. Conley*, 456 F.2d 1382, 1388 (6th Cir. 1972).

sexual encounters with Plaintiff, the first in 2007 and the incident at issue in 2008.[35] Accepting as true Plaintiff's testimony that Payne raped her in 2008, the Court finds Payne's conduct to be shocking and abhorrent. Nevertheless, for purposes of § 1983 liability, Plaintiff has failed to establish that Payne was acting under color of law when he raped Plaintiff. There is no evidence that Payne "exercised or purported to exercise his authority as [a city employee] to rape" Plaintiff.[36] None of the alleged sexual activity took place at the Westwood Pool or on any city property where Payne was employed as a city employee. None of the alleged sexual activity took place while Payne was on duty or acting in the scope of his employment with the City of Memphis. The undisputed evidence shows that the Westwood Pool was closed for the day due to inclement weather. There is no evidence that Payne had additional duties once the pool was closed. Upon learning that Plaintiff and her boyfriend (also a pool employee) were waiting for a ride, Payne offered them a ride home in Payne's personal vehicle. Plaintiff has not adduced any evidence that Payne acted in any official capacity as a city employee once he had left the city pool. In fact, there is evidence in the record that Payne violated city policy by offering a ride to a minor leaving the pool.[37] The fact that Payne was violating city policy by giving Plaintiff a

---

[35] The Court highlights that the first sexual encounter between Payne and Plaintiff occurred at the Westwood Pool property, although it is not clear whether Payne was on-duty at the time. The Court finds the facts surrounding the 2007 incident, few as they are, very troubling. However, Plaintiff has not pled a cause of action based on that incident. It appears that whatever cause of action Plaintiff may have had for that conduct is now untimely. Tennessee law provides a one-year statute of limitations for § 1983 actions. Tenn.Code Ann. § 28-3-104(a)(3); *Berndt v. Tennessee,* 796 F.2d 879, 883 (6th Cir.1986). Plaintiff's first sexual encounter with Paynee occurred in 2007, and the case at bar was filed on August 25, 2009.

[36] *Mooneyhan v. Hawkins*, No. 96-6135, 1997 WL 685423, at *4, 129 F.3d 1264 (Table) (6th Cir. Oct. 29, 1997).

[37] Boddie Depo. 21:23-22:5, Mar. 30, 2011.

ride tends to show that Payne was not acting in his capacity as a city employee when he offered the ride. Thus, the Court holds that Plaintiff cannot show that Payne was acting "in the course of performing an actual duty of his office." Instead the sexual activity occurred in the ambit of Payne's personal time and places his conduct beyond the scope of § 1983. Therefore, the Court holds that Defendants are entitled to summary judgment as to Plaintiff's § 1983 claims.

Plaintiff makes two similar arguments that Payne developed trust with Plaintiff and used that trust to get her to accept a ride.[38] Plaintiff contends that Payne exercised some degree of authority over the minors who came to the Westwood Pool and in that role gained Plaintiff's trust.[39] Additionally, Payne gained the trust of Plaintiff's boyfriend because the two men were co-workers. Thus, but for Payne's employment with the city, Plaintiff and her boyfriend would not have placed their trust in Payne and gotten into his car. The Court finds Plaintiff's reasoning unconvincing.

The Court accepts as true Plaintiff's assertion that Payne had a position of influence with her and other minors using the pool. The Court further accepts that Payne had built trust and rapport with Plaintiff such that she was willing to accept a ride from him. These facts simply

---

[38] The only case Plaintiff cites for support is *Waters v. Morristown*. There the Sixth Circuit affirmed the dismissal of a § 1983 claim against a city alderman because the alderman was not acting under color of law. The alderman, who was by profession a veterinarian, had taken it upon himself to intervene in the personal affairs of his veterinary assistant in unusual ways. For example, the defendant had locked her in the veterinary clinic for ten days in an effort to force her to stop drinking alcohol. The assistant alleged that the defendant used his authority as city alderman to carry out this and other acts. The Court finds *Waters* to be so factually distinguishable that the case does not support Plaintiff's argument (and if anything cuts against it).

[39] It is not clear to the Court how Plaintiff's placing trust in Payne squares with the sexual encounter Plaintiff had with Payne the year before, that is, whether that incident made Plaintiff trust Payne more or less.

show that Payne and Plaintiff were not strangers and were perhaps even friends. They do not prove that Payne was acting under color of law when he raped Plaintiff. The test for whether a state actor acted under color of law is "not what the victim knew about the [actor] at the time of the incident but rather what actions did the [actor] take to assert his authority under color of state law."[40]

Furthermore, even if Payne had gained Plaintiff's trust in his capacity as a pool employee, Plaintiff's decision to accept a ride from the pool was not the proximate cause of her rape. The record shows that a number of intervening events occurred before Plaintiff found herself alone and under threat from Payne. Once Plaintiff left the Westwood Pool, she traveled with Payne and her boyfriend to the boyfriend's home. At that time Plaintiff and her boyfriend accepted Payne's offer to come back later and drive Plaintiff and her boyfriend to other places. Payne returned later and drove the boyfriend to a gym. Payne then told Plaintiff that he had to meet an unidentified man at a residence. When Payne and Plaintiff arrived at that residence, the individual was not there. Payne nevertheless asked Plaintiff to enter the home, smoke with him, and give him a massage, all of which Plaintiff apparently did. After leaving the residence, Payne then began to drive Plaintiff to her home. It was only after all of these other events had occurred that Payne perpetrated his assault on Plaintiff. At no point did Payne use his authority as a pool employee to coerce Plaintiff into any of these acts. The Court concludes that under these facts, no reasonable juror could conclude that Payne was exercising his authority as a pool employee when he committed the rape hours after he had left work. Therefore, Defendant's Motion for Summary Judgment as to this claim is **GRANTED**.

---

[40] *Mooneyhan*, 1997 WL 685423, at *5 (citing *West*, 487 U.S. at 49, 108 S. Ct. 2250).

### **III.     State Law Claims**

This leaves Plaintiff's state law claims. It is settled law that the district court may exercise jurisdiction over a pendent state law claim, even after the basis for removal to federal court has been eliminated, if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity.[41] Generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well.[42] Therefore, Plaintiff's state law claims are dismissed without prejudice.

### **CONCLUSION**

Plaintiff has failed to carry her burden to present evidence from which a reasonable juror could return a verdict in her favor. Defendant City of Memphis is entitled to summary judgment on Plaintiff's § 1983 municipal liability claim. Plaintiff has failed to establish that the City of Memphis was deliberately indifferent to a serious risk of constitutional harm when it failed to conduct a background check on its temporary employees like Timothy Payne. Plaintiff has further failed to offer proof that Defendant Timothy Payne was acting under color of state law when he raped Plaintiff. Defendants are entitled to summary judgment on Plaintiff's official and individual capacity claims. Having dismissed the claims which formed the basis of this Court's jurisdiction, the Court also dismisses Plaintiff's GTLA claims without prejudice. Therefore,

---

[41] *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

[42] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992) (citing *Gibbs,* 383 U.S. at 726, 86 S. Ct. 1130).

Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

     **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 29th, 2011.